443 S.E.2d 127 (1994)
114 N.C. App. 693
DICKERSON CAROLINA, INC.
v.
Thomas J. HARRELSON, in his individual capacity and as Secretary of the North Carolina Department of Transportation and as Chairman of the North Carolina Board of Transportation, D.W. Bailey, in his individual capacity and as Chairman of the MBE Goal Compliance Committee of the North Carolina Department of Transportation, B.G. Jenkins, in his individual capacity and as a member of the MBE Goal Compliance Committee of the North Carolina Department of Transportation, Bob Brown, in his individual capacity and as a member of the MBE Goal Compliance Committee of the North Carolina Department of Transportation, William R. Brown, P.E., in his individual capacity and as a member of the MBE Goal Compliance Committee of the North Carolina Department of Transportation, William A. Perry, Jr., in his individual capacity and as a member of the MBE Goal Compliance Committee of the North Carolina Department of Transportation, J.O. Murphy, in his individual capacity and as a member of the MBE Goal Compliance Committee of the North Carolina Department of Transportation, Philip P. Godwin, in his individual capacity and as a member of the North Carolina *128 Board of Transportation, Ken Newsom, in his individual capacity and as a member of the North Carolina Board of Transportation, Jefferson B. Strickland, in his individual capacity and as a member of the North Carolina Board of Transportation, Elwood Goodson, in his individual capacity and as a member of the North Carolina Board of Transportation, Jack A. Laughery, in his individual capacity and as a member of the North Carolina Board of Transportation, W. Cary Livesay, in his individual capacity and as a member of the North Carolina Board of Transportation, Albert McCauley, in his individual capacity and as a member of the North Carolina Board of Transportation, Charles Lowdermilk, in his individual capacity and as a member of the North Carolina Board of Transportation, F. Hudnall Christopher, in his individual capacity and as a member of the North Carolina Board of Transportation, Jim Nance, in his individual capacity and as a member of the North Carolina Board of Transportation, Ernest Barry, Jr., in his individual capacity and as a member of the North Carolina Board of Transportation, Richard Vaughn, in his individual capacity and as a member of the North Carolina Board of Transportation, John B. Beall, in his individual capacity and as a member of the North Carolina Board of Transportation, Dean Proctor, in his individual capacity and as a member of the North Carolina Board of Transportation, J.A. Dalpiaz, in his individual capacity and as a member of the North Carolina Board of Transportation, David Brown, in his individual capacity and as a member of the North Carolina Board of Transportation, C.W. Hardin, in his individual capacity and as a member of the North Carolina Board of Transportation, and Crowder Construction Company, Defendants.
No. 9310SC296.
Court of Appeals of North Carolina.
May 17, 1994.
*129 Smith Helms Mulliss & Moore by Douglas W. Ey, Jr., Paul K. Sun, Jr. and Matthew W. Sawchak, Charlotte, for plaintiff-appellant.
Atty. Gen. Michael F. Easley by Sr. Deputy Atty. Gen. Edwin M. Speas, Jr., Sr. Deputy Atty. Gen. Reginald L. Watkins, Sp. Deputy Atty. Gen. Grayson G. Kelley, and Sp. Deputy Atty. Gen. Tiare B. Smiley, Raleigh, for defendant-appellee.
WYNN, Judge.
In 1990 the North Carolina Department of Transportation (NCDOT) solicited bids for Project 6.671043, construction of a highway interchange, in Mecklenburg County. All bidders were subject to N.C.Gen.Stat. § 136-28.4, "State Policy Concerning Participation by Disadvantaged Businesses in Highway Contracts." Amended in July 1990, this statute set a 10% goal for contract participation by businesses owned or controlled by minorities (MB's) and a 5% goal for businesses owned or controlled by women (WB's). The statute provides:
(a) It is the policy of this State to encourage and promote participation by disadvantaged businesses in contracts let by the Department pursuant to this Chapter for the design, construction, alteration, or maintenance of State highways, roads, streets, or bridges and in the procurement of materials for these projects. All State agencies, institutions, and political subdivisions shall cooperate with the Department of Transportation and all other State agencies, *130 institutions, and political subdivisions in efforts to encourage and promote the use of disadvantaged businesses in these contracts.
(b) A ten percent (10%) goal is established for participation by minority businesses and a five percent (5%) goal for participation by women businesses is established in contracts let by the Department of Transportation for the design, construction, alteration, or maintenance of State highways, roads, streets or bridges and for the procurement of materials for these projects. The Department of Transportation shall endeavor to award to minority businesses at least ten percent (10%), by value, of the contracts it lets for these purposes, and shall endeavor to award to women businesses at least five percent (5%), by value, of the contracts it lets for these purposes. The Department shall adopt written procedures specifying the steps it will take to achieve these goals. The Department shall give equal opportunity for contracts it lets without regard to race, religion, color, creed, national origin, sex, age, or handicapping condition, as defined in G.S. 168A-3, to all contractors and businesses otherwise qualified.
(c) The following definitions apply in this section:
(1) "Disadvantaged business" has the same meaning as in 49 C.F.R. § 23.62.
(2) "Minority" has the same meaning as in 49 C.F.R. § 23.5.
N.C.Gen.Stat. § 136.28.4 (1993).
NCDOT implemented this statute in a document entitled "Project Special Provision Minority Businesses" (PSP) on or about 17 July 1990. The PSP established contract participation goals for MBs and WBs and required that each contractor subject to the PSP take all necessary and reasonable steps to achieve these goals. The PSP further provided that if a low bidder's bid did not meet the designated set-aside percentages, it could submit information documenting its "good faith effort" to meet the goals. The PSP authorized NCDOT to reject a bid if the low bidder failed to demonstrate an adequate good faith effort to meet the contract goals. NCDOT established a Goals Compliance Committee (GCC), composed of senior officials, to implement the set-aside goals and evaluate the bidders' good faith efforts.
On 19 February 1991, NCDOT opened the bids on Project 6.671043 and found plaintiff Dickerson Carolina, Inc. to be the lowest bidder with a bid of $5,322,119.82. The second lowest bid, submitted by Crowder Construction Company (Crowder), was $88,743.58 higher. The GCC determined, however, that Dickerson had not shown an adequate good faith effort to include minority and women businesses' participation in its bid. On 1 March 1991, the North Carolina Board of Transportation, which approves the award of highway construction contracts, followed the GCC's recommendation and unanimously rejected Dickerson's bid. The Board then awarded the contract to Crowder.
Dickerson brought this action against the Secretary of the Department of Transportation and members of the Board of Transportation and of the GCC, seeking injunctive relief and monetary damages against defendants in their official and individual capacities for violations of Dickerson's federal and state constitutional rights. In its complaint Dickerson alleged that N.C.Gen.Stat. § 136-28.4 is unconstitutional on its face and as applied and that defendants, acting pursuant to the PSP, violated Dickerson's rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution, Article I, Section 19 of the North Carolina Constitution, and 42 U.S.C. § 1981. Dickerson charged that defendants' actions denied it the right to compete on an equal basis for the construction contract. Dickerson asserted that due to these violations it was entitled to damages under 42 U.S.C. § 1983.
Dickerson moved for summary judgment as to the constitutional claims, and defendants moved for summary judgment as to all of plaintiff's claims under the United States Constitution, the North Carolina Constitution, and 42 U.S.C. §§ 1981 and 1983. The trial court granted defendants' motion and denied plaintiff's motion. The trial court then designated the order a final judgment as to those claims, pursuant to N.C.Gen.Stat. § 1A-1, Rule 54(b), and ruled there was no *131 just reason to delay the final adjudication of these claims. From this order, plaintiff appeals.

I.
Dickerson first argues that N.C.Gen. Stat. § 136-28.4 and the PSP are unconstitutional as violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and under Article I, section 19 of the North Carolina Constitution. Dickerson contends the United States Supreme Court's decision in City of Richmond v. J.A. Croson Co., 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) requires that a minority set-aside program serve a compelling state interest and that the statute and the regulations fail this test. We conclude, however, that since NCDOT has changed its minority set-aside program in response to a finding by the General Assembly of historical discrimination in the highway construction industry, plaintiff's constitutional challenge in the instant case is now moot.
"Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." In re Peoples, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), cert. denied, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); Granville County Bd. of Comm'rs v. North Carolina Hazardous Waste Management Comm'n, 329 N.C. 615, 407 S.E.2d 785, reh'g denied, 409 S.E.2d 593 (1991); Benvenue Parent-Teacher Ass'n v. Nash County Bd. of Educ., 275 N.C. 675, 170 S.E.2d 473 (1969). An appeal which presents a moot question should be dismissed. Matthews v. North Carolina Dep't of Transportation, 35 N.C.App. 768, 242 S.E.2d 653 (1978). Judicial power only extends to concrete, justiciable, and actual controversies properly brought before the court and each decision of law must be based on specific facts established by stipulation or by appropriate legal procedure. First Nat'l Bank of Catawba County v. Edens, 55 N.C.App. 697, 286 S.E.2d 818 (1982); see Boswell v. Boswell, 241 N.C. 515, 85 S.E.2d 899 (1955).
The record indicates that in response to plaintiff's suit NCDOT temporarily suspended its minority set-aside program pending a review of its factual basis. From September 1991 to April 1993 NCDOT's goals program operated on a voluntary basis. While contractors submitting bids were requested to meet the MB and WB goals, low bids were not rejected if the goals were not met. The defendants' brief indicates that in January 1993 the General Assembly received the results of a comprehensive study of the highway construction industry which concluded that MB and WB contractors had suffered from historical discrimination. The legislature's Highway Oversight Committee requested NCDOT to reimplement a program designed to meet the goals established in N.C.Gen.Stat. § 136-28.4. NCDOT subsequently instituted a minority set-aside program which is similar in scope to the PSP which is the subject of the instant case.
When the necessary determinative facts have not been established in the lower court, the appellate court will not decide the question sought to be presented, since such a decision would amount to an advisory opinion on an abstract question. See Boswell, 241 N.C. at 518-9, 85 S.E.2d at 902; City of Henderson v. Vance County, 260 N.C. 529, 133 S.E.2d 201 (1963). In addition, a court "will pass upon the constitutionality of a statute only when the issue is squarely presented upon an adequate factual record and only when resolution of the issue is necessary to determine the rights of the parties before it." State v. Fayetteville Street Christian School, 299 N.C. 351, 359, 261 S.E.2d 908, 914, on reh'g, 299 N.C. 731, 265 S.E.2d 387, appeal dismissed, 449 U.S. 807, 101 S.Ct. 55, 66 L.Ed.2d 11 (1980); Nicholson v. State Educ. Assistance Authority, 275 N.C. 439, 168 S.E.2d 401 (1969); Union Carbide Corp. v. Davis, 253 N.C. 324, 116 S.E.2d 792 (1960).
In the instant case, the 1993 legislative study of the highway construction industry and the new minority set-aside program established by NCDOT are necessary evidence in determining the constitutionality of *132 N.C.Gen.Stat. § 136-28.4. "The law is plain that the constitutional sufficiency of a state's proffered reasons necessitating an affirmative action plan should be assessed on whatever evidence is presented, whether prior to or subsequent to the program's enactment." Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo, 981 F.2d 50, 60 (2nd Cir. 1992); see Contractors Ass'n of Eastern Pennsylvania, Inc. v. City of Philadelphia, 6 F.3d 990 (3rd Cir.1993); Coral Constr. Co. v. King County, 941 F.2d 910 (9th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992). Plaintiff argues that the former NCDOT minority set-aside program, the PSP, is unconstitutional because there is no evidence in the record of prior discrimination in the North Carolina highway construction industry. Since NCDOT has modified the PSP in response to the 1993 legislative study which found evidence of historical discrimination in the highway construction industry, plaintiff's challenge to the old PSP is now moot. See Harrison & Burrowes, 981 F.2d at 59 (challenge to minority set-aside program was moot when an emergency regulation was enacted suspending application of minority enterprise goals on state-funded contracts); Maryland Highway Contractors Ass'n v. State of Maryland, 933 F.2d 1246 (4th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991) (claims for declaratory and injunctive relief regarding state minority program dismissed as moot where legislature repealed statute and enacted new statute in attempt to comply with City of Richmond v. J.A. Croson Co., 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989)). This assignment of error is dismissed.

II.
Dickerson next argues that the trial court erred by granting defendants' motion for summary judgment as to Dickerson's claims for damages for violations of its federal constitutional rights. Dickerson brought this action for damages under 42 U.S.C. § 1983, which provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (1988).
Dickerson sued the members of the Board and the GCC in their official and individual capacities. In Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court ruled that the definition of a "person" under § 1983 does not include public officials acting in their official capacity. Thus, the only way Dickerson can maintain an action for damages for violations of its federal constitutional rights is to sue the defendants in their individual capacities. Hafer v. Melo, ___ U.S. ___, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); Corum v. University of North Carolina, 330 N.C. 761, 413 S.E.2d 276, reh'g denied, 331 N.C. 558, 418 S.E.2d 664, cert. denied, ___ U.S. ___, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992).
We conclude, however, that defendants are immune from suit for damages in their individual capacities. To determine the immunity to be accorded as a defense in a suit under § 1983, we must look to federal law. Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214, reh'd denied, 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975). State immunities and defenses are not relevant in § 1983 litigation, even when, as here, the suit is brought in state court. Martinez v. California, 444 U.S. 277, 284, n.8, 100 S.Ct. 553, 558-59, n.8, 62 L.Ed.2d 481, 488, n.8, reh'g denied, 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980). Public officials cannot be liable for damages in a civil rights action based on federal law unless clearly established statutory or constitutional rights of which a reasonable person would have known have been violated. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If an official's acts are not clearly unlawful under existing precedent, the official is not personally liable. *133 Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "[I]n the light of pre-existing law the unlawfulness must be apparent." Id., 483 U.S. at 640, 107 S.Ct. at 3039, 97 L.Ed.2d at 531. See also Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411, 426 (1985) (Public officials are immune unless "the law clearly proscribed the actions [they] took.").
In the instant case, defendants participated in formulating and implementing a program mandated by state law. Legislative classifications are presumed to be constitutional. New York State Club Ass'n v. City of New York, 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). The United States Supreme Court has held that "state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." Lemon v. Kurtzman, 411 U.S. 192, 209, 93 S.Ct. 1463, 1473, 36 L.Ed.2d 151, 166 (1973).
Our Supreme Court has also held that state officials are entitled to immunity from civil liability under the federal constitution for complying with a presumptively valid state statute. Bailey v. State of North Carolina, 330 N.C. 227, 244, 412 S.E.2d 295, 305 (1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1942, 118 L.Ed.2d 547 (1992) ("We will not hold public officials of this state to more perfect knowledge of the law than is apparent in appellate court reports."); See Swanson v. Powers, 937 F.2d 965, 968 (4th Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 871, 116 L.Ed.2d 777 (1992) ("Rarely will a state official who simply enforces a presumptively valid statute thereby lose her immunity from suit."). Because defendants acted pursuant to a presumptively valid statute, the trial court did not err by granting their motion for summary judgment on plaintiff's claim for damages under § 1983.
For the foregoing reasons, the order of the trial court is
Affirmed.
ARNOLD, C.J., and MARTIN, J., concur.