CYNTHIA SMITH-PRICE, Plaintiff v. CHARTER BEHAVIORAL HEALTH SYSTEMS, d/b/a CHARTER HOSPITAL, and JAY LAWS, joint and severally Defendants

No. COA99-1523

(Filed 18 May 2004)

**1. Appeal and Error— appealability—bankruptcy court action—mootness**

Defendant employer's motion to dismiss plaintiff employee's appeal in a negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, retaliation for reporting illegal, unprofessional, and immoral conduct, negligent supervision, and negligent retention of employees case is allowed because the order of the bankruptcy court disallowing plaintiff's claims against defendant has rendered moot the issue of whether defendant was entitled to summary judgment dismissing plaintiff's claims.

**2. Appeal and Error— preservation of issues—assignments of error**

Although defendant contends that plaintiff's appeal should be dismissed based on plaintiff's alleged failure to follow N.C. R. App. P. Rule 10(c) which requires each assignment of error to state plainly, concisely, and without argumentation the legal basis upon which error is assigned, the notice of appeal sufficed as an assignment of error directed to the order of summary judgment.

**3. Emotional Distress— negligent infliction—duty of care**

The trial court did not err by granting defendant co-worker's motion for summary judgment on plaintiff's claim for negligent infliction of emotional distress based on defendant co-worker communicating false and misleading information regarding plaintiff's employment behavior and job performance to defend-

SMITH-PRICE v. CHARTER BEHAVIORAL HEALTH SYS.

[164 N.C. App. 349 (2004)]

ant company, because plaintiff failed to present evidence that defendant co-worker owed her a duty of care or that he breached such a duty.

**4. Emotional Distress— intentional infliction—extreme and outrageous conduct required**

The trial court did not err by granting defendant co-worker's motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress because considered in the light most favorable to plaintiff, the evidence does not show extreme and outrageous conduct on defendant's part.

**5. Libel and Slander— slander—good faith**

The trial court erred by granting defendant co-worker's motion for summary judgment on plaintiff's slander claim, because there are genuine issues of material fact as to whether defendant acted in good faith in accusing plaintiff of sexual harassment.

Appeal by plaintiff from judgment entered 20 September 1999 by Judge Russell G. Walker, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 17 March 2004.

*Gray, Newell, Johnson & Blackmon, LLP, by Angela Newell Gray, for plaintiff-appellant.*

*Smith Moore LLP, by Julie C. Theall, for defendant-appellee Charter Behavioral Health Systems.*

*Haynsworth Baldwin Johnson & Greaves LLC, by Lucretia D. Guia, for defendant-appellee Jay Laws.*

MARTIN, Chief Judge.

In her amended complaint in this action against defendants Charter Behavioral Health Systems ("Charter"), Jean Hubbard ("Hubbard"), Charter's Director of Nursing, and Jay Laws ("Laws"), a mental health specialist at Charter, plaintiff alleges claims for negligent infliction of emotional distress, intentional infliction of emotional distress, defamation and retaliation for reporting illegal, unprofessional and immoral conduct. Plaintiff also alleged claims against defendant Charter for negligent supervision and negligent retention of three of its employees. All defendants filed answers in which they denied the material allegations of plaintiff's amended

complaint and asserted affirmative defenses. Plaintiff subsequently dismissed the action against Hubbard with prejudice, and defendants Charter and Laws moved for summary judgment.

Materials before the trial court at the hearing on defendants' motions for summary judgment disclose that plaintiff, a registered nurse, and Laws worked in the children's unit at Charter's Greensboro facility. Although Laws was under the direct supervision of plaintiff, she had no administrative authority. As early as November 1997, plaintiff complained about Laws' tardiness, abuse of phone privileges, failure to follow policy, insubordination and his inappropriate sexual relationship with a co-worker. She also expressed dissatisfaction with Charter's under-staffing, but Charter took no corrective action.

On 5 February 1998, Laws arrived late at work, which, according to plaintiff, was not uncommon. After plaintiff confronted Laws about his tardiness, excessive phone calls, taking "off orders" and his attitude at work, he angrily walked away from plaintiff. Laws returned a few minutes later, claiming taking "off orders" was not his job, and threw a packet of papers containing a job description at plaintiff, hitting her in the chest. Plaintiff testified in her deposition that the impact caused her little physical pain, but the incident was emotionally traumatic. After this episode, plaintiff enlisted the help of the assistant director of nursing, Kathy Williams, who agreed that defendant Laws should be sent home for the day for insubordination. At the request of Williams, plaintiff prepared a written statement of the events to submit to Hubbard the following day.

Although Laws was not scheduled to work the following day, he came into Charter and submitted a report claiming plaintiff had sexually harassed him. An investigation of the allegation was promptly initiated by Charter. Some employees corroborated Laws' complaints while others expressed no knowledge of inappropriate behavior by plaintiff. However, because of the allegations, plaintiff was moved to the adult unit of the hospital while Laws remained on the children's unit. On or about 10 February 1998 plaintiff took a medical leave due to the stress caused by the accusations.

The trial court granted summary judgment in favor of both defendants and plaintiff gave notice of appeal. On 16 February 2000, Charter filed for relief under Chapter 11 of the United States Bankruptcy Code. By order dated 3 March 2000, this Court stayed all further proceedings in this case until notified that the automatic stay

provided by 11 U.S.C. § 362 had been lifted. Such notification was received by this Court on 16 July 2003.

## Plaintiff's Appeal as to Defendant Charter

[1] On 22 October 2001, the United States Bankruptcy Court for the District of Delaware disallowed plaintiff's claims against Charter in full. Charter has moved to dismiss plaintiff's appeal of the order granting summary judgment in its favor on the grounds that plaintiff's claim against Charter has been disallowed by the Bankruptcy Court, rendering the issues between plaintiff and Charter in this appeal moot.

> Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

*In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied,* 442 U.S. 929, 61 L. Ed. 2d 297 (1979). "An appeal which presents a moot question should be dismissed." *Dickerson Carolina, Inc. v. Harrelson*, 114 N.C. App. 693, 698, 443 S.E.2d 127, 131 (1994). The order of the Bankruptcy Court disallowing plaintiff's claim against Charter has rendered moot the issue of whether Charter was entitled to summary judgment dismissing plaintiff's claims. Charter's motion to dismiss plaintiff's appeal is, therefore, allowed.

## Plaintiff's Appeal as to Defendant Laws

### I.

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Summary judgment is appropriate when "viewed in the light most favorable to the non-movant," *Id.*, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). The moving party must establish the lack of any triable issue of material fact "by proving that an essential element of the opposing party's claim is non-

existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681-82, 565 S.E.2d 140, 146 (2002) (citation omitted). The burden then shifts to the nonmoving party to "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial." *Id.* (citation omitted). Although summary judgment is seldom granted in negligence cases, it may be granted where the evidence shows "a lack of any negligence on the part of the defendant." *Surrette v. Duke Power Co.*, 78 N.C. App. 647, 650, 338 S.E.2d 129, 131 (1986).

## II.

[2] Initially, defendant Laws argues that plaintiff's appeal should be dismissed because plaintiff has not followed the North Carolina Rules of Appellate Procedure which require each assignment of error to "state plainly, concisely and without argumentation the legal basis upon which error is assigned." N. C. R. App. P. Rule 10(c). "An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references." *Id.*

Each of plaintiff's assignments of error state, "The trial court erred by granting the defendants' motion for summary judgment as to plaintiff's claim of . . . ." An appeal from an order granting summary judgment raises only the issues of whether, on the face of the record, there is any genuine issue of material fact, and whether the prevailing party is entitled to a judgment as a matter of law. Therefore, the notice of appeal suffices as an assignment of error directed to the order of summary judgment. *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987); *Vernon, Vernon, Wooten, Brown & Andrews, P.A. v. Miller*, 73 N.C. App. 295, 297, 326 S.E.2d 316, 319 (1985). Plaintiff's assignments of error are clearly sufficient.

## III.

[3] Plaintiff contends the trial court erred by granting defendant Laws' motion for summary judgment as to her claim for negligent infliction of emotional distress. The negligent act upon which plaintiff's claim is grounded is that Laws "communicat[ed] false and misleading information regarding the Plaintiff's employment behavior and job performance to the defendant company."

To establish a claim for negligent infliction of emotional distress, the plaintiff must prove that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). "In order to establish actionable negligence, plaintiff must show (1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury." *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984).

In this case, plaintiff presented no evidence to establish that defendant Laws owed her a duty of care or that he breached such a duty. Therefore, an essential element of plaintiff's claim for negligent infliction of emotional distress is unsupported by the evidence and summary judgment was properly allowed. *See Guthrie v. Conroy*, 152 N.C. App. 15, 25, 567 S.E.2d 403, 411 (2002).

IV.

[4] Plaintiff next contends the trial court erred by granting defendant Laws' motion for summary judgment as to her claim for intentional infliction of emotional distress. The elements for the tort of intentional infliction of emotional distress are: "1) extreme and outrageous conduct by the defendant 2) which is intended to cause and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citation omitted). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (citation omitted), *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). The behavior must be more than "mere insults, indignities, threats, . . . and . . . plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (citation omitted), *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986). The determination of whether the alleged conduct is considered extreme and outrageous is a question of law for the trial judge, however, the jury must determine whether the conduct is "suf-

ficiently extreme and outrageous to result in liability." *Id.* at 490-91, 340 S.E.2d at 121.

The evidence, considered in the light most favorable to plaintiff, does not, as a matter of law, show extreme and outrageous conduct on Laws' part. Plaintiff asserts that prior to 5 February 1998, defendant Laws failed to follow policies and procedures, took excessive personal phone calls, and failed to perform certain tasks. On 5 February 1998, when plaintiff confronted Laws, he threatened to make accusations against her, yelled at her, walked off his assignment and then, when he returned, threw a package of papers at plaintiff. The next day he filed a complaint of sexual harassment against plaintiff. Although defendant's behavior was undeniably churlish and ill-mannered, it does not rise to the level of the extreme and outrageous conduct which is required to sustain a claim for intentional infliction of emotional distress. *See Hogan,* 79 N.C. App. at 490, 340 S.E.2d at 121 (extreme and outrageous behavior found where defendant made sexually suggestive remarks and physical insinuations to plaintiff and when she refused his advances he screamed profane names at her, threatened her with bodily injury and slammed a knife down on the table in front of her); *Watson v. Dixon,* 130 N.C. App. 47, 53, 502 S.E.2d 15, 20 (1998), *aff'd,* 352 N.C. 343, 532 S.E.2d 175 (2000) (extreme and outrageous behavior found where defendant frightened and humiliated plaintiff with cruel practical jokes, made obscene comments to her, made indecent physical suggestions and threatened her personal safety); *McLain v. Taco Bell Corp.,* 137 N.C. App. 179, 527 S.E.2d 712, *disc. review denied,* 352 N.C. 357, 544 S.E.2d 563 (2000) (extreme and outrageous behavior found where defendant, after physically assaulting plaintiff, began masturbating, and ejaculated on plaintiff); *compare with Wilson v. Bellamy,* 105 N.C. App. 446, 468, 414 S.E.2d 347, 359, *disc. review denied,* 331 N.C. 558, 418 S.E.2d 668 (1992) (extreme and outrageous behavior was not found where defendant engaged in kissing and heavy petting with an intoxicated plaintiff while others were present); *Hogan,* 79 N.C. App. at 493, 340 S.E.2d at 122-23 (extreme and outrageous behavior was not found where defendant yelled and threw menus at plaintiff and interfered with her supervision of employees). Because plaintiff has not presented evidence sufficient to support a finding of the element of extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress, the trial court properly granted defendant Laws' motion for summary judgment as to that claim.

V.

**[5]** In her final argument, plaintiff contends that the trial court erred by granting defendant Laws' motion for summary judgment as to her claim for defamation. To prevail on a claim of defamation, "a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Tyson v. L'Eggs Products, Inc.*, 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987). "In North Carolina, the term defamation applies to the two distinct torts of libel and slander." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002). Slander is defined as "the speaking of base or defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood." *Black's Law Dictionary*, 1559 (4th Ed. 1968). In this case, plaintiff argues that defendant Laws slandered her by making accusations that she had sexually harassed him.

"However, even if it is determined that a statement is slanderous, the law recognizes certain communications as privileged." *Long v. Vertical Technologies*, 113 N.C. App. 598, 601, 439 S.E.2d 797, 800 (1994). "The essential elements for the qualified privilege to exist are good faith, an interest to be unheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and the proper parties only." *Id.* at 602, 439 S.E.2d at 800. "Additionally, a qualified privilege may be lost by proof of actual malice on the part of the defendant." *Id.*

There is conflicting evidence in the record as to whether defendant's allegations were true. Laws testified that plaintiff sexually harassed him by rubbing his head and telling him his head was "sexy," hugging him inappropriately, making explicit sexual comments about his penis, and by pulling her clothing aside so as to expose her bra and thong. Hubbard testified in her deposition that although she "initially was not sure [Laws] was telling the truth," she felt like "there was something going on" even though she could not substantiate the accusations. However, in her deposition, plaintiff denied all of Laws' accusations. Therefore, there is a genuine issue of material fact as to the truth of Laws' accusations.

Moreover, although Laws had a legitimate interest in reporting any incidents of improper sexual advances or conduct to plaintiff's supervisor, there is evidence which would support a finding that he

did not act in good faith, so as to be entitled to a qualified privilege. There was evidence that Laws filed his sexual harassment claim the morning after he was sent home for insubordination, having never before mentioned any alleged sexual harassment on plaintiff's part. There was also evidence that during the 5 February 1998 incident, Laws threatened to tell Charter's administration that plaintiff was having a relationship with another employee, William Bynum. Therefore, there are genuine issues of fact as to whether defendant Laws acted in good faith in accusing plaintiff of sexual harassment and the trial court should not have granted summary judgment as to her claim for defamation.

Affirmed in part, reversed in part and remanded.

Judges HUDSON and GEER concur.