Carolina Med. Partners, PLLC v. Shah, 2025 NCBC 52.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
MASTER FILE 22CVS013767-590

CAROLINA MEDICAL PARTNERS, PLLC; NIMISH PATEL; and SHEPHALI PATEL,

Plaintiffs,

v.

AMIT G. SHAH and PALMETTO MEDICAL GROUP, PLLC,

Defendants.

**ORDER AND OPINION ON DEFENDANTS SHAH'S AND PALMETTO MEDICAL GROUP, PLLC'S MOTION TO DISMISS**

AMIT G. SHAH and PALMETTO MEDICAL GROUP, PLLC,

Plaintiffs,

v.

NIMISH PATEL and SHEPHALI PATEL,

Defendants.

24CV059193-590
RELATED CASE

NIMISH PATEL and SHEPHALI PATEL,

Plaintiffs,

v.

AMIT G. SHAH; PALMETTO MEDICAL GROUP, PLLC; PIEDMONT RESEARCH PARTNERS, LLC; CAROLINAS LIVING, L.L.C.; and CAROLINAS SENIOR CARE, LLC,

Defendants.

24CV059359-590
RELATED CASE

1. These consolidated cases arise out of disputes among three physicians who once practiced together. There are many claims and parties. Only those claims

brought by Nimish and Shephali Patel in *Patel v. Shah*, No. 24CV059359-590 are at issue here.  Amit Shah and Palmetto Medical Group, PLLC have moved to dismiss the Patels' claims on a variety of grounds.  For the following reasons, the Court **GRANTS in part** and **DENIES in part** their motion.

*Ward and Smith, P.A., by Alexander C. Dale and Edward James Coyne, for Nimish Patel, Shephali Patel, and Carolina Medical Partners, PLLC.*

*K&L Gates LLP, by Daniel Drew McClurg and Marla Tun Reschly, for Palmetto Medical Group, PLLC and Amit G. Shah.*

*Robinson, Bradshaw & Hinson, P.A., by Stephen M. Cox, for Piedmont Research Partners, LLC.*

*Burris, MacMillan, Pearce & Burris, PLLC, by Hugo Pearce, III, for Carolinas Living, L.L.C. and Carolinas Senior Care, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

2.     This background assumes that the Patels' allegations are true, as required on a motion to dismiss.  (*See* Compl., ECF No. 3 [No. 24CV059359-590].)

3.     The Patels are physicians, as is Shah.  For many years, the trio practiced together at Palmetto Medical Group, which is an adult and senior primary care practice.  They also had shared interests in several other medical businesses, including Mint MedSpa, Piedmont Research Partners, LLC, Carolinas Living, LLC, and more.  (*See* Compl. ¶¶ 20, 24.)

4.     By the middle of 2021, Shah and the Patels could not work together any longer, with each side leveling accusations of misconduct against the other.  They mediated their disputes and executed a Practice Separation Agreement.  This was

not a comprehensive settlement. It resolved certain disputes—for example, transferring Mint MedSpa to the Patels and allowing Shah to buy the Patels' interests in Palmetto Medical Group. And it set out a framework for resolving other disputes, including the creation of a special litigation committee to investigate potential derivative claims that each side wished to bring on Palmetto Medical Group's behalf. The parties agreed not to assert certain additional claims until the committee finished its investigation. (*See* Compl. ¶¶ 28–30.)

5. But this peace did not last long. Just a month after signing the Practice Separation Agreement, the Patels sued Shah and Palmetto Medical Group for breaching it. This was the first of what would become three lawsuits in this consolidated action. After some initial skirmishing, the parties held another mediation in 2023 and signed another settlement agreement. This, too, was just a partial settlement. At the parties' joint request, the Court stayed the remaining claims while the special litigation committee conducted its investigation. (*See* Compl. ¶ 31; *see also* Order on Jt. Mot. Stay, ECF No. 56.)

6. In late 2024, the special litigation committee finished its work and concluded that it would not be in Palmetto Medical Group's interest for either side to pursue derivative claims. Following the report, Shah and the Patels began two new lawsuits and asserted the claims that they had reserved pending completion of the committee's investigation. The new cases were then consolidated with the Patels' original case to form this consolidated action. At that point, the parties mediated yet again, but without success.

7.     The Patels' most recent complaint is wide-ranging.  There are eleven claims. Some claims touch on events that occurred before the Practice Separation Agreement, involving Palmetto Medical Group, Carolinas Living, and Piedmont Research Partners.  Other claims touch on more recent events, including implementation of the 2023 settlement agreement.

8.     Shah and Palmetto Medical Group have moved to dismiss all eleven claims. Having reviewed the briefs, the Court concludes that oral argument would not aid its decision and therefore decides the motion without a hearing.  *See* BCR 7.4.

## II.
## ANALYSIS

9.     "The Rules of Civil Procedure require notice pleading, with a policy to resolve controversies on the merits rather than on technicalities of pleading."  *Quackenbush v. Groat*, 271 N.C. App. 249, 253 (2020) (cleaned up).  For that reason, a motion to dismiss should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."  *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).

10.     In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party.  *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted).  Exhibits to the complaint are deemed to be part of it and may also be considered, *see Krawiec v. Manly*, 370 N.C.

602, 606 (2018), but the Court need not accept as true any "conclusions of law or unwarranted deductions of fact," *Wray v. City of Greensboro*, 370 N.C. 41, 46 (2017) (citation and quotation marks omitted).

11.     Shah and Palmetto Medical Group have moved to dismiss all eleven claims asserted against them.   The parties' scattershot arguments focus far more on mundane disagreements about what the complaint says than they do on weighty legal questions.   Given the prevalence of straightforward questions of notice pleading in the briefs, the Court has chosen not to beat around the bush but instead to cut straight to the meat of each issue, addressing first a dispute about timeliness before turning to the claims themselves.[*]

12.     **<u>Statute of Limitations.</u>**  Shah and Palmetto Medical Group argue that six claims are time-barred.   Their argument is premature, not least because the complaint alleges that the parties agreed that these claims would not be asserted while they engaged in mediation and other forms of alternative dispute resolution. (*See* Compl. ¶ 30.)  Whether the circumstances tolled the statute of limitations or otherwise prevent its application is a question for discovery.   The Court cannot conclude that the claims are untimely on the face of the complaint.  *See Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994) ("A statute of limitation or repose may be the basis of a 12(b)(6) dismissal if on its face the complaint reveals the claim is barred.").

---

[*] It appears that North Carolina law will apply to some claims in this case and that South Carolina law will apply to others.  The choice of law does not matter, however, for the issues that have been briefed.

13. **Claims One and Two.** The Patels' first two claims are for breach of fiduciary duty and constructive fraud against Shah. They are premised on the same allegations that Shah engaged in improper billing practices for Palmetto Medical Group that artificially increased his distributions while decreasing the Patels' distributions. (*See* Compl. ¶¶ 46–58, 153.) Shah moves to dismiss the claims on three grounds.

14. First, Shah argues that the claims must be dismissed because the special litigation committee rejected them. The Court disagrees. The special litigation committee's report dealt with potential derivative claims, not direct claims. Moreover, the report is outside the four corners of the complaint. Perhaps the committee's conclusions, and the evidence before it, will merit attention at a later stage. But its conclusions do not require dismissal of the claims. *See JT Russell & Sons, Inc. v. Russell*, 2025 NCBC LEXIS 22, at *18 (N.C. Super. Ct. Mar. 4, 2025) (treating similar report as "evidence outside the pleadings" (citation and quotation marks omitted)).

15. Second, Shah argues that the Patels lack standing. According to Shah, if his conduct amounted to a breach, it was a breach of a duty owed to Palmetto Medical Group rather than one owed to the Patels. Notably, though, Shah does not dispute that he, as Palmetto Medical Group's majority member and sole manager, owed a fiduciary duty to the Patels, as minority members. Liberally construed, the allegations that Shah took actions to benefit himself at the Patels' expense are sufficient to state a claim for breach of that duty.

16. Third, Shah argues that the complaint does not sufficiently allege that he acted in bad faith or that the Patels suffered harm. But taking the allegations as true, they show that Shah rigged things so that he would get distributions that he did not deserve and that the Patels would get less than they had earned. That is sufficient to show bad faith and resulting harm.

17. The Court therefore denies the motion to dismiss claims one and two.

18. **Claim Three.** The shareholder agreement for Palmetto Medical Group made the Patels eligible "to participate in and potentially receive periodic shareholder bonuses." (Shah Ex. F sched. A, ECF No. 115.7.) The bonus formula was to be split "75% towards productivity and 25% towards ownership." (Shah Ex. F sched. A.) In their third claim, the Patels allege that Palmetto Medical Group breached this provision by manipulating the formula to reduce their bonuses. Palmetto Medical Group seeks to dismiss the claim on the ground that the bonuses are discretionary, not mandatory. But that is not persuasive. Whether the phrase "potentially receive" means "discretionary" is not clear from the face of the agreement. And even if the decision to give a bonus is discretionary, the formula for setting the amount of the bonus is not. The complaint adequately alleges that Palmetto Medical Group breached the agreement by awarding bonuses but departing from the stated formula. Thus, the Court denies the motion to dismiss the third claim.

19. **Claim Four.** This claim is also for breach of the shareholder agreement. In paragraph 7 of the agreement, Palmetto Medical Group promised to pay for the Patels' professional licenses and memberships, malpractice insurance, and certain

other expenses. (*See* Shah Ex. F ¶ 7.) In paragraph 9, it agreed that the Patels would directly receive compensation for "working as locum outside the routine office hours" and for work "as a medical director, advisory physician or as a speaker." (Shah Ex. F ¶ 9.) As alleged, the Patels paid professional expenses out of their own pockets for which they were not reimbursed and performed locum work and director-related services for which they were not compensated. (*See* Compl. ¶¶ 70–75.) These allegations, though not exhaustive, adequately identify the contract terms at issue and the nature of the supposed breaches. They therefore satisfy the requirement of notice pleading, contrary to Palmetto Medical Group's argument. The Court denies the motion to dismiss this claim.

20. **Claim Five.** The Patels allege that Shah fraudulently induced them to invest in Carolinas Living. As Shah correctly observes, the complaint does not state this claim with the particularity required for fraud claims. *See* N.C. R. Civ. P. 9(b). As an initial matter, the complaint does not allege the time and place of the supposed misrepresentations. *See S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 611 (2008). In addition, the alleged misrepresentations concern Shah's opinions as to the value of certain property, which "do not generally constitute legal fraud." *Am. Laundry Mach. Co. v. Skinner*, 225 N.C. 285, 290 (1945) (citation and quotation marks omitted). It is true that a statement of opinion may amount to fraud if the speaker does not honestly hold that opinion. *See Leftwich v. Gaines*, 134 N.C. App. 502, 508–09 (1999). Here, though, the complaint does not include allegations along those lines with sufficient particularity. In addition, the complaint does not

allege in a nonconclusory way that the Patels were "denied the opportunity to investigate" or could not have learned the truth "by exercise of reasonable diligence." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346 (1999). The Court therefore grants the motion to dismiss this claim.

21. **Claim Six.** In this claim, the Patels assert that Shah breached sections 3 and 4 of their 2023 settlement agreement. Even taking the allegations as true, the complaint fails to state a claim for breach.

22. In section 3, Shah agreed to use "his best efforts" to convince a lender to release the Patels from their personal guarantees related to the financing for the building in which Palmetto Medical Group operates. (Shah Ex. A § 3, ECF No. 115.2.) If "removal [of the guaranties] is not accomplished," then Shah must indemnify the Patels for any loss associated with the guaranties. (Shah Ex. A § 3.) Although the Patels allege that Shah has not made his best efforts, they do not allege that the lender would have released them from their guaranties had he done so. Nor do they allege that they have suffered any loss for which Shah must indemnify them (or that he has refused to abide by his indemnification obligation). (*See, e.g.*, Compl. ¶¶ 210, 211.)

23. Section 4 requires Shah to use his "best efforts to transfer" the MedSpa's "phone line, number, and account" to the Patels by May 2023. (Shah Ex. A § 4.) The Patels do not allege that Shah failed to transfer the phone line, number, and account by that date. Instead, they allege that he briefly rerouted the phone number to an answering service many months later. (*See, e.g.*, Compl. ¶¶ 213, 214.) Rerouting the

MedSpa's phone calls may have been a wrongful act (see claim seven below), but it is not a breach of the obligation to transfer the phone number and account in the first place.

24. The Court grants the motion to dismiss claim six.

25. **Claim Seven.**  The Patels assert a claim for wrongful interference with prospective contract against Shah.  They allege that he prevented patients from making appointments with the Patels by rerouting calls meant for the MedSpa to his own answering service.  Shah argues that the claim must be dismissed because the patients' contracts would have been with the MedSpa, not with the Patels individually.  Although the allegations are not as clear as they could have been, they do appear to stress that the patients had relationships with the Patels.  (*See, e.g.*, Compl. ¶¶ 219–22.)  Whether the prospective contracts would have been with the Patels, the MedSpa, or both is a question better left for discovery.  The Court denies the motion to dismiss this claim.

26. **Claim Eight.**  This claim is for unjust enrichment against Shah.  The first element of a claim for unjust enrichment is that "one party must confer a benefit upon the other party."  *JPMorgan Chase Bank, N.A. v. Browning*, 230 N.C. App. 537, 541 (2013).  The Patels have not adequately alleged this essential element.  They allege only that they performed "services as sub-investigators for" Piedmont Research Partners without receiving payment and that Shah was Piedmont Research Partners' principal investigator.  (Compl. ¶¶ 227, 229.)  Even if true, these allegations show that the Patels conferred a benefit on Piedmont Research Partners, not Shah.  If the

Patels meant to allege that they performed services directly for Shah and that he promised to pay them personally, they have not done so clearly enough to put Shah or the Court on notice of a claim along those lines. The Court grants the motion to dismiss claim eight.

27. **Claim Nine.** The Patels claim that Shah breached Piedmont Research Partners' partnership agreement by making distributions without the members' unanimous consent. Although the parties debate whether North Carolina or South Carolina law governs, it does not appear that the choice of law matters for this motion. Shah contends that there are no allegations that he caused the disputed distributions or that the Patels suffered harm. But that is incorrect. The complaint expressly alleges that Shah directed and made the distributions. (*See* Compl. ¶ 237.) And it asserts that the Patels were harmed by being deprived of their right to vote on distributions (even though they may also have benefited by receiving unwanted distributions). (*See* Compl. ¶¶ 236, 237.) The Court must take these allegations as true. They suffice to state a claim, and the motion to dismiss claim nine is therefore denied.

28. **Claim Ten.** In their tenth claim, the Patels allege that Shah breached the operating agreement for Carolinas Living. That agreement obligates Carolinas Living's managing member to maintain records and provide access to them. As alleged, Carolinas Senior Care, not Shah, is the managing member of Carolinas Living. (*See* Compl. ¶ 92.) Thus, the operating agreement imposes no obligation on Shah personally, and the Patels may not maintain a claim for breach based on his

alleged refusal to provide access to Carolinas Living's books and records. The Court grants the motion to dismiss claim ten.

29. **Claim Eleven.** The eleventh and final claim is for intentional infliction of emotional distress. Extreme and outrageous conduct—meaning conduct that "exceeds all bounds of decency tolerated by society"—is an essential element. *Turner v. Thomas*, 369 N.C. 419, 427 (2016) (cleaned up); *see also Waddle v. Sparks*, 331 N.C. 73, 82 (1992). The complaint does not meet this high standard, alleging only that "Shah berated Shephali Patel about her fitness as a wife and mother," "call[ed] her an unfit wife, disparag[ed] her abilities as a doctor, and [told] her she did not know how to run a business." (Compl. ¶¶ 116, 117.) To disparage a person in this way may be rude, insulting, and even heartless. Even so, the law allows the "freedom to express an unflattering opinion." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677 (1985) (citation and quotation marks omitted). Shah's remarks, alleged as vaguely as they are, do not come close to the outrageous conduct at issue in the Patels' cited cases. *See Clark v. Clark*, 280 N.C. App. 403, 417 (2021) (having an affair and conceiving a child with a mistress while belittling spouse); *Norton v. Scotland Mem'l Hosp., Inc.*, 250 N.C. App. 392, 399 (2016) (refusing to allow plaintiffs to see dying family member as he called for them and then removing ventilator without consent). The Court grants the motion to dismiss claim eleven.

III.
CONCLUSION

30. For all these reasons, the Court partly **GRANTS** the motion and **DISMISSES** without prejudice claims five, six, eight, ten, and eleven to the extent

asserted against Shah and Palmetto Medical Group. In all other respects, the Court **DENIES** the motion.

31. The Court reminds the parties that they have until 21 October 2025 to conduct fact discovery and until 26 November 2025 to conduct expert witness discovery. The Court does not anticipate extending these deadlines absent extraordinary cause and a substantial showing that the parties have diligently pursued discovery.

**SO ORDERED**, this the 28th day of August, 2025.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases