IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-530

Filed: 15 November 2016

Scotland County, No. 15 CVS 460

JESSIE NORTON, in her individual capacity and in her capacity as the executor of the Estate of NORMAN CHRISTOPHER NORTON, WILLIAM NORTON, and DANIEL MICHAEL NORTON, Plaintiffs,

v.

SCOTLAND MEMORIAL HOSPITAL, INC., and DUKE UNIVERSITY HEALTH SYSTEM, INC., Defendant.

Appeal by plaintiffs from order entered 23 February 2016 by Judge Richard T. Brown in Scotland County Superior Court. Heard in the Court of Appeals 3 October 2016.

> *Peterkin Law Firm, PLLC, by Timothy J. Peterkin, for plaintiff-appellants.*
>
> *Brotherton Ford Berry & Weaver, PLLC, by Robert A. Ford and Demetrius W. Berry, for defendant-appellee Scotland Memorial Hospital, Inc.*
>
> *Young Moore and Henderson, P.A., by Angela Farag Craddock, Donna Renfrow Rutala, and David A. Senter, for defendant-appellee Duke University Health System, Inc.*

TYSON, Judge.

Plaintiffs appeal from the trial court's order dismissing their complaint under Rules 9(j) and 12(b)(6) of the Rules of Civil Procedure against defendants, Scotland Memorial Hospital, Inc. ("Scotland Memorial") and Duke University Health System, Inc. ("Duke Hospital"). We affirm in part, reverse in part, and remand.

I.  Background

Norman Christopher Norton was admitted to Scotland Memorial in Laurinburg, North Carolina on 9 July 2012 with complaints of abdominal pain.  Mr. Norton was married to plaintiff Jessie Norton, and is the father of the couple's two children, also plaintiffs.  Mr. Norton was fairly active and in good health.

While a patient at Scotland Memorial, Mr. Norton's condition worsened.  He was transferred to the intensive care unit, placed on a ventilator, and subsequently died.  It is unclear from the face of the complaint whether Mr. Norton died at Scotland Memorial or after he was transferred to Duke University Hospital in Durham, North Carolina.  Duke Hospital's responsive pleading states Mr. Norton's deceased body was transferred to Duke Hospital on 11 July 2012.  Scotland Memorial's responsive pleading states Mr. Norton's body was transferred to Duke Hospital on 12 July 2012.

Plaintiffs filed a complaint against Scotland Memorial and Duke Hospital on 10 July 2015.  Plaintiffs allege Mr. Norton screamed and cried out several times for his wife and children, but Scotland Memorial staff refused to allow Mr. Norton's wife or family to see him.

The complaint alleges Mr. Norton's cries were so loud and adamant that other visitors in the waiting room commented.  Mrs. Norton informed staff that she had waited an excessive amount of time to see her husband.  Staff members sat beside her in the waiting room, but refused to allow her to see her husband.  The complaint

further alleges that neither Mr. Norton nor Mrs. Norton gave permission for Mr. Norton to be removed from the ventilator.

The complaint further alleges Duke Hospital staff asked Mrs. Norton if she wished for an autopsy to be performed, and she responded in the affirmative. The complaint alleges Mrs. Norton requested for Mr. Norton's head not to be cut during the autopsy. She had previously discussed this issue with Mr. Norton, and he had indicated it was important to him. Duke Hospital staff informed Mrs. Norton they were required to cut Mr. Norton's head based upon the orders received from Scotland Memorial.

The complaint also alleges Mr. Norton had previously agreed to be an organ donor, but declined to remain an organ donor when he renewed his driver's license. He had also discussed this issue with Mrs. Norton. Mrs. Norton was informed by the funeral home that Mr. Norton's organs and eyes had been removed from his body.

Plaintiffs' complaint alleges five causes of action against both defendants: (1) negligent infliction of emotional distress; (2) intentional infliction of emotional distress; (3) loss of consortium; (4) negligence; and (5) wrongful death. Both defendants filed motions to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted and under Rule 9(j) for failure to plead that a qualified expert had reviewed the medical care and records prior to filing the complaint.

On 23 February 2016, the trial court dismissed Plaintiffs' claims against both defendants with prejudice for failure to comply with the requirements of Rule 9(j). The court also concluded Plaintiffs' wrongful death claims against the defendants were barred by the statute of limitations, and dismissed those claims under Rule 12(b)(6). The trial court also dismissed Plaintiffs' remaining claims under 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiffs appeal.

## II. Dismissal of Plaintiffs' Claims

The trial court dismissed Plaintiffs' claims under three separate grounds: (1) failure to meet the requirements of Rule 9(j) for the medical malpractice claims; (2) failure to file the complaint within the applicable statute of limitations for the wrongful death and loss of consortium claims; and (3) failure to state a claim under Rule 12(b)(6).

## A. Standards of Review

A trial court's order dismissing a complaint pursuant to Rule 9(j) presents a question of law, and is therefore reviewed *de novo* on appeal. *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 256, 677 S.E.2d 465, 477, *disc. review denied*, 363 N.C. 651, 684 S.E.2d 690 (2009).

> On appeal from a motion to dismiss under Rule 12(b)(6), this Court reviews *de novo* "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted [.]" We consider the allegations in the complaint true, construe the complaint liberally, and only reverse the trial court's denial

of a motion to dismiss if plaintiff is entitled to no relief
under any set of facts which could be proven in support of
the claim.

*Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 231, 664 S.E.2d 649, 652 (2008)

(quoting *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)), *disc.*

*review denied*, 363 N.C. 372, 678 S.E.2d 234 (2009).

B.  Dismissal of Wrongful Death and Loss of Consortium Claims

1.  Rule 9(j)

The trial court determined Plaintiffs had brought a "medical malpractice

action" as defined by N.C. Gen. Stat. § 90-21.11, and dismissed all of Plaintiffs' claims

for failure to comply with Rule 9(j).

Rule 9(j) of the North Carolina Rules of Civil Procedure requires dismissal of

any complaint alleging medical malpractice, unless the pleading asserts a medical

expert has reviewed the medical care and records, and would testify that the medical

care did not comply with the applicable standard of care set forth in N.C. Gen. Stat.

§ 90-21.12. N.C. Gen. Stat. § 1A-1, Rule 9(j) (2015). A "medical malpractice action" is

defined as either of the following:

> a.  A civil action for damages for personal injury or death
> arising out of the furnishing or failure to furnish
> professional services in the performance of medical, dental,
> or other health care by a health care provider.
>
> b.  A civil action against a hospital . . .  for damages for
> personal injury or death, when the civil action (i) alleges a
> breach of administrative or corporate duties to the patient,

including, but not limited to, allegations of negligent credentialing or negligent monitoring and supervision and (ii) arises from the same facts or circumstances as a claim under sub-subdivision a. of this subdivision.

N.C. Gen. Stat. § 90-21.11(2) (2015).

"Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements." *Barringer*, 197 N.C. App. at 255, 677 S.E.2d at 477.

Plaintiffs' loss of consortium claim is derivative of, and relies upon the validity of the spouse's claim for injury or wrongful death. *See, e.g., Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 40, 493 S.E.2d 460, 462 (1997). Plaintiffs have failed to show how their claims for wrongful death and loss of consortium do not arise from medical malpractice under the definitions set forth in N.C. Gen. Stat. § 90-21.11(2), which require a Rule 9(j) medical expert's certification. The trial court properly dismissed Plaintiffs' wrongful death and loss of consortium claims due to failure to comply with Rule 9(j).

## 2. Statute of Limitations

In addition to dismissing the wrongful death and loss of consortium claims under Rule 9(j), the trial court determined the claims were also barred by the applicable statute of limitations. N.C. Gen. Stat. § 1-53(4) (2015). Plaintiffs have not challenged the trial court's dismissal based upon expiration of the applicable statute of limitations. Any argument challenging the trial court's dismissal of those claims

based upon the statute of limitations is abandoned. N.C. R. App. P. 28(b)(6). The trial court's unchallenged dismissal of the wrongful death and loss of consortium actions under Rule 12(b)(6) for failure to file the claims within the statute of limitations remains undisturbed.

### C.  Negligence and Negligent Infliction of Emotional Distress

Plaintiffs argue the negligence and negligent infliction of emotional distress claims are not "medical malpractice" claims and do not require a Rule 9(j) certification.  Plaintiffs argue those claims are related to "how [Mr. Norton] was prevented from seeing his family as he was dying and the unauthorized autopsy and the displacement of [Mr. Norton's] organs."

Regardless of whether those claims require a Rule 9(j) certification, Plaintiffs failed to challenge the trial court's dismissal of these negligence claims pursuant to Rule 12(b)(6) for failure to state a claim.  Any argument challenging the trial court's dismissal of those claims under Rule 12(b)(6) is abandoned. N.C. R. App. P. 28(b)(6). The trial court's unchallenged dismissal of those causes of actions under Rule 12(b)(6) remains undisturbed.

### D.  Intentional Infliction of Emotional Distress ("IIED")

Plaintiffs challenge the trial court's dismissal of the IIED claims against the defendants under both Rules 9(j) and 12(b)(6).

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Extreme and outrageous conduct is defined as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 354, 595 S.E.2d 778, 782 (2004) (citation omitted).

Our appellate courts have "set a high threshold for finding that conduct meets the standard." *Dobson v. Harris*, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000).

> This tort imports an act which is done with the intention of causing emotional distress or with reckless indifference to the likelihood that emotional distress may result. A defendant is liable for this tort when he desires to inflict severe emotional distress or *knows that such distress is certain, or substantially certain, to result from his conduct* or where he acts recklessly in deliberate disregard of a high degree of probability that the emotinal [sic] distress will follow and the mental distress does in fact result.

*Dickens*, 302 N.C. at 449, 276 S.E.2d at 333 (citations, quotations, and ellipsis omitted) (emphasis supplied).

"[T]he initial determination of whether conduct is extreme and outrageous is a question of law for the court: 'If the court determines that it may reasonably be so

regarded, then it is for the jury to decide whether, under the facts of a particular case, defendants' conduct . . . was in fact extreme and outrageous.' " *Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 381-82 (1987) (quoting *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311 (1985)).

### 1.  Scotland Memorial

### a.  Rule 9(j) Requirement

Plaintiffs argue a Rule 9(j) certification was not required for this claim, because the allegations do not involve an injury to Mr. Norton or concern his medical treatment or death.  Instead, the injuries to Plaintiffs stem from Scotland Memorial staff's failure and refusal to allow Mrs. Norton and her children to see their husband and father as he was crying out in distress prior to his death.  We agree.

Plaintiff's complaint alleges:

> 10.  There were several times that Mr. Norton screamed and cried out for his wife and children to come back with him.

> 11.  The staff at Scotland refused to allow Mr. Norton's family to see him.  His cries were so loud and adamant that visitors in the waiting area commented on it.

> 12.  At one point, Jessie Norton advised the hospital staff that she had waited an excessive amount of time to see her husband and she wanted to see him.  At that point, staff members came and sat beside her and refused to let her see her husband.

> .   .   .   .

> 23. The frustration regarding not being about [sic] to be there for Mr. Norton has haunted his family, causing emotional distress that has occasionally manifested into physical symptoms.

The complaint further alleges Mr. Norton was thereafter removed from the ventilator without his or Mrs. Norton's consent and died.

As discussed above, a Rule 9(j) certification is required in a "medical malpractice" action, which is defined as "a civil action for damages for personal injury or death arising out of the health care provider's furnishing or failure to furnish professional services," or "breach of an administrative or corporate dut[y] to the patient." N.C. Gen. Stat. § 90-21.11(2).

The allegations against Scotland Memorial regarding the staff's refusal to allow Mrs. Norton and her children to see Mr. Norton as he was distressed and crying out for them prior to the unconsented removal of the ventilator occurred while Scotland Memorial rendered medical services to Mr. Norton. Plaintiffs' claims for IIED against Scotland Memorial do not seek damages arising from allegations of Mr. Norton's "personal injury or death." *Id*. The damages claimed by Plaintiffs are not damages sustained by Mr. Norton. Rather, Plaintiffs, Mr. Norton's wife and children, claim they sustained emotional damage by hearing Mr. Norton call out to them prior to his death, and from being prevented from seeing him, coupled with the unconsented to removal of the ventilator. These unique and specific factual

allegations do not fall under the plain language of Rule 9(j) to require a medical expert's certification. *Id.*

### b. Rule 12(b)(6) Dismissal

"A complaint should not be dismissed under Rule 12(b)(6) 'unless it affirmatively appears that plaintiff is entitled to no *relief under any state of facts which could be presented in support of the claim.'" *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985) (quoting *Presnell v. Pell,* 298 N.C. 715, 719, 260 S.E.2d 611, 613 (1979)) (emphasis supplied). "The system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." *Id.* "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Pyco Supply Co., Inc. v. American Centennial Ins. Co.*, 321 N.C. 435, 442-43, 364 S.E.2d 380, 384 (1988) (citation omitted).

Under the notice pleading standard, the face of Plaintiffs' complaint does not reveal an insurmountable bar to recovery on the allegations of IIED against Scotland Memorial for us to sustain the dismissal under Rule 12(b)(6). The allegations and circumstances surrounding Scotland Memorial's refusal to allow Mr. Norton's family to see him, and the hospital's reasonableness and justification, or lack thereof, and

the consequences to the family are issues "for discovery and the other pretrial procedures." *Id.* at 444, 364 S.E.2d at 384.

Plaintiffs' IIED claims may later be determined to be insufficient to go to the jury, but that issue is not before us. Based solely upon the allegations on the face of their complaint, Plaintiffs should be provided the opportunity, afforded by the Rules of Civil Procedure, to discover and "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Id.* The trial court's dismissal under Rule 12(b)(6) of Plaintiff's IIED allegation against Scotland Memorial was premature, and is reversed.

### 2. Duke Hospital

### a. Rule 9(j) Requirement

Plaintiffs' complaint alleges Mr. Norton was admitted as a patient and treated at Scotland Memorial, and "at some point, Mr. Norton was transferred to Duke." The complaint alleges:

> 15. Duke asked Mrs. Norton if she wanted an autopsy for Mr. Norton and she responded in the affirmative.
>
> 16. Mrs. Norton was asked on multiple occasions if she wanted an autopsy.
>
> 17. Mrs. Norton asked Duke if they would avoid cutting Mr. Norton's head open. This was an issue that she and Mr. Norton had discussed. This was an important issue to him.

18. Mrs. Norton was informed by Duke that they had to open his head because it was ordered by Scotland.

19. Mr. Norton had been an organ donor. However, when he renewed his most recent driver's license, he declined to be an organ donor. This was an important issue that he had addressed with his wife prior to his death.

20. At some point, Mr. Norton's previous driver's license was taken, not the most recent driver's license that indicated that he would not agree to be an organ donor.

21. When Mr. Norton's body arrived at the funeral home, his organs had been removed and were never returned.

22. Mrs. Norton was dealt with rudely as she sought to locate her husband's organs and eyes.

.   .   .   .

24. The misappropriation of Mr. Norton's organs has also created frustration, additional grief and emotional distress for his family.

Plaintiffs' claims against Duke Hospital pertain to alleged actions by Scotland Memorial and Duke Hospital after Mr. Norton's death, and do not involve the provision of medical care under N.C. Gen. Stat. § 90-21.11. A medical expert's certification under Rule 9(j) was not required to validate Plaintiffs' IIED claim against Duke Hospital, after Mr. Norton was deceased and the allegations against Duke Hospital pertain to the autopsy and removal of organs. *See Bennett v. Hospice & Palliative Care Ctr. of Alamance-Caswell*, __ N.C. App. __, 783 S.E.2d 260 (2016) (holding claims which occurred subsequent to the decedent's death, mishandling the

body and failure to provide bereavement services, did not involve the provision of medical care to require a Rule 9(j) certification).

### b. Rule 12(b)(6) Dismissal

Regardless of whether a Rule 9(j) certification was required for Plaintiffs' claim against Duke Hospital, Plaintiffs failed to state and plead sufficient facts to allege extreme and outrageous conduct by Duke Hospital or its staff. Accepting Plaintiffs' factual allegations against Duke Hospital as true and in the light most favorable to Plaintiffs with the benefit of every reasonable inference, the complaint indicates the autopsy was ordered by Scotland Memorial. Mrs. Norton was asked to consent and authorized Duke Hospital to perform an autopsy, but requested Duke Hospital to refrain from cutting Mr. Norton's head. Duke Hospital informed Mrs. Norton that such a procedure would be required under Scotland Memorial's order. The complaint does not indicate or assert whether Mrs. Norton then attempted to limit or prevent the autopsy, or whether Mr. Norton's head was in fact cut during the course of the autopsy. The complaint does not allege whether Duke Hospital performed the autopsy, and only describes Mrs. Norton's conversation with Duke Hospital staff, when she consented to the autopsy.

Plaintiffs also allege Mr. Norton's organs were removed, even though his most recent driver's license indicated he did not consent to organ donation. Taking Plaintiffs' allegations as true, the complaint indicates Duke Hospital was in

possession of Mr. Norton's previous driver's license, which indicated he had agreed to

be an organ donor, and not his most recent driver's license, which did not so indicate.

> Our law recognizes that the next of kin has a quasi-property right in the body – not property in the commercial sense but a right of possession for the purpose of burial – and that there arises out of this relationship to the body an emotional interest which should be protected and which others have a duty not to injure intentionally or negligently . . . . Furthermore, the survivor has the legal right to bury the body as it was when life became extinct. *Kyles v. R. R., supra* [147 N.C. 394, 61 S.E. 278]. For any mutilation of a dead body the one entitled to its custody may recover compensatory damages for his mental suffering caused thereby if the mutilation was either intentionally or negligently committed, *Morrow v. R. R.*, 213 N.C. 127, 195 S.E. 383, *or was done by an unlawful autopsy.* If defendant's conduct was wilful or wanton, actually malicious, or grossly negligent, punitive damages may also be recovered. *Kyles v. R. R., supra.*"

*Parker v. Quinn-McGowen Co.*, 262 N.C. 560, 561-62, 138 S.E.2d 214, 215-16 (1964)

(emphasis supplied).

The complaint fails to allege whether Duke Hospital knew or should have

known about Mr. Norton's change in status as an organ donor, or whether Duke

Hospital intentionally disregarded his status as an organ donor. Plaintiffs' have

failed to allege facts to show Duke Hospital acted with intention to cause emotional

distress or with reckless indifference to the likelihood that emotional distress may

result, or "kn[ew] that such distress is certain, or substantially certain, to result.

*Dickens*, 302 N.C. at 449, 276 S.E.2d at 333. Plaintiffs' complaint does not indicate

the conduct by Duke Hospital staff in performing the autopsy with Mrs. Norton's consent and the handling of Mr. Norton's organs was "beyond all possible bounds of decency, . . . atrocious, and utterly intolerable in a civilized community." *Smith-Price,* 164 N.C. App. at 354, 595 S.E.2d at 782. *See Hardin v. York Mem'l Park*, 221 N.C. App. 317, 327, 730 S.E.2d 768, 777 (holding children of deceased parents failed to sufficiently plead extreme and outrageous conduct to support IIED claim against cemetery, where cemetery sold family burial plots to third parties and their mother was unable to be buried next to their father), *disc. review denied*, 366 N.C. 571, 738 S.E.2d 376 (2012). The trial court properly dismissed Plaintiffs' IIED claim against Duke Hospital. Plaintiffs' arguments are overruled.

IV. Conclusion

Even were we to presume a Rule 9(j) certification is not required for some or all of the claims Plaintiffs raised in their complaint, the trial court's Rule 12(b)(6) dismissal of all claims, except the intentional infliction of emotion distress claim, is unchallenged and remains undisturbed. The trial court's Rule 12(b)(6) dismissal of Plaintiffs' IIED claim against Scotland Memorial was premature, and is reversed. The trial court did not err in dismissing the IIED claim against Duke Hospital under Rule 12(b)(6). The trial court's order is affirmed in part, reversed in part, and remanded.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Chief Judge MCGEE and Judge DIETZ concur.